In the

# United States Court of Appeals

## For the Seventh Circuit

No. 17-2660

JEFFREY MARTENSEN,

*Plaintiff-Appellant,*

*v.*

CHICAGO STOCK EXCHANGE,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 17 C 1494 — **Milton I. Shadur**, *Judge.*

ARGUED JANUARY 11, 2018 — DECIDED FEBRUARY 20, 2018

Before EASTERBROOK and BARRETT, *Circuit Judges*, and
STADTMUELLER, *District Judge.*[*]

EASTERBROOK, *Circuit Judge*. Jeffrey Martensen used to be
a supervisor in the Chicago Stock Exchange's unit responsible for examining compliance with trading regulations. He
was fired in mid-2016 and contends in this suit that his dis-

---

[*] Of the Eastern District of Wisconsin, sitting by designation.

charge violates 15 U.S.C. §78u–6(h), a part of the Dodd-Frank Act that protects whistleblowers.

Martensen's complaint does not allege that he reported to the Securities and Exchange Commission any fraud or other unlawful activity at the Exchange. The district judge summarily dismissed the suit, ruling that only a person who has reported "a violation of the securities laws to the Commission" (§78u–6(a)(6)) is covered by §78u–6(h). See 2017 U.S. Dist. LEXIS 87621 (N.D. Ill. June 7, 2017). The judge recognized that some courts have held that a report to the SEC is unnecessary but thought that view incompatible with §78u–6(a)(6). Martensen proposed to file an amended complaint alleging that he had indeed reported fraud to the SEC, but the judge blocked that step, declaring that the absence of detail made an amendment pointless.

Every plaintiff is entitled to file one amended complaint within 21 days of the original complaint, an answer, or a motion to dismiss. Fed. R. Civ. P. 15(a)(1). Martensen was eligible under that rule, no matter what the judge thought of the amendment's merit. An amendment authorized by Rule 15(a)(1) must be accepted. But the question remains whether the decision was prejudicial to Martensen. If the judge would have dismissed the amended complaint immediately after its filing, a remand would be pointless.

The Supreme Court has under advisement a case posing the question whether a whistleblower's protection depends on complaining directly to the SEC. *Digital Realty Trust, Inc. v. Somers*, No. 16–1276 (argued Nov. 28, 2017). And on the day Martensen's appeal was argued, this court issued its opinion in *Verfuerth v. Orion Energy Systems, Inc.*, 879 F.3d 789 (7th Cir. 2018). *Verfuerth* holds that a Dodd-Frank whis-

tleblower case need not wait for the Court's decision in *Digital Realty Trust* when the plaintiff's own filings show that he has not reported "a violation of the securities laws" (§78u–6(a)(6)) to anyone at all.

Both sides have filed post-argument memoranda discussing *Verfuerth*. The Stock Exchange contends that it requires affirmance. Martensen, by contrast, contends that it supports him because he *has* reported fraud to the SEC. He tells us that his amended complaint would allege that on January 13, 2014, he reported securities fraud by filling out a Form TCR on the Commission's website.

So far, so good. But Martensen adds that this report was unrelated to his discharge. His memorandum states: "It is … important to understand that … Martensen does *not* allege that he was terminated from the [Stock Exchange] due to his SEC form TCR submission" (emphasis in original). Martensen traces his discharge to an internal complaint filed with the Stock Exchange itself on April 29, 2016, in which he accused his superior of instructing Martensen's unit to act in a way that he deems inconsistent with one of the Exchange's internal rules.

In other words, Martensen treats a report to the SEC as conferring a status—like a whistleblower lapel pin—that prevents employers from responding adversely to later reports that do not concern fraud or any other violation of the securities laws and never reach the SEC. As Martensen sees things, the act that makes one a whistleblower need not affect the eventual adverse action. That would make §78u–6(h) unique in federal law. The retaliation doctrine in employment-discrimination law covers only a protected act that causes the adverse action. See, e.g., 42 U.S.C. §2000e–3(a);

*University of Texas Southwestern Medical Center v. Nassar*, 133 S. Ct. 2517 (2013). Other anti-retaliation rules are treated similarly; causation is built into the definition of the word "retaliate."

Federal law uses causation in many senses, from "motivating factor" (some role) to but-for causation (an essential role) to proximate causation (an essential and closely connected role). See, e.g., *Paroline v. United States*, 134 S. Ct. 1710, 1722–26 (2014) (discussing these many shadings of causation); *Nassar* (holding that but-for causation is essential under §2000e–3(a)). As far as we know, none of the many legal theories grouped under the heading "retaliation" dispenses with *all* causal relation between the act that justifies the label "whistleblower" and the adverse employment action. Subsection 78u–6(h) is captioned "Protection of whistleblowers" and paragraph (1) "Prohibition against retaliation". In context this means "retaliation for being a whistleblower." Martensen disclaims any contention that the Exchange retaliated against him for the act that made him a whistleblower, and unless §78u–6(h) is to stand alone in the American legal canon, that is dispositive against him.

Martensen rests his claim on §78u–6(h)(1)(A)(iii). To provide context, we reproduce all of subparagraph (A):

> No employer may discharge, demote, suspend, threaten, harass, directly or indirectly, or in any other manner discriminate against, a whistleblower in the terms and conditions of employment because of any lawful act done by the whistleblower—
>
> > (i) in providing information to the Commission in accordance with this section;
> >
> > (ii) in initiating, testifying in, or assisting in any investigation or judicial or administrative action of the Commission based upon or related to such information; or
> >
> > (iii) in making disclosures that are required or protected under the Sarbanes-Oxley Act of 2002 (15 U.S.C. 7201 et seq.), this chapter, including section 78j–1(m) of this title, section 1513(e) of title 18, and any other law, rule, or regulation subject to the jurisdiction of the Commission.

Clauses (i) and (ii) specify acts that may make someone a whistleblower under the definition of §78u–6(a)(6), because they entail reports to the Commission. Clause (iii) is a principal basis for the respondent's argument (joined by the Solicitor General) in *Digital Realty Trust* that a report to the SEC is unnecessary; some of the disclosures within clause (iii) do not reach the Commission, so if §78u–6(a)(6) makes a report to the Commission essential then some kinds of reports mentioned in clause (iii) are unprotected. It follows, respondent and the SG maintain, that a report to the SEC is not required in the first place. Martensen offers a different way to understand clause (iii). He contends that it protects anyone with whistleblower *status* (based on an earlier, unrelated report to the SEC) from any retaliation for disclosures covered in clause (iii) whether or not they concern violations of the securities laws and whether or not they reach the SEC.

It is linguistically possible to read clause (iii) that way, even though doing so would mean that the whistleblower

report no longer plays a causal role. Perhaps the Supreme Court in *Digital Realty Trust* will decide whether that is the proper way to understand clause (iii). Our opinion in *Verfuerth* concluded that the allegations must concern fraud or other violations of federal securities law; that view is incompatible with Martensen's submission. But we need not try to anticipate the decision in *Digital Realty Trust* or put this appeal on hold until the Supreme Court has spoken. For Martensen has not argued that his internal complaint was "required or protected" by any particular rule of the Chicago Stock Exchange.

Martensen does contend that every rule of the Stock Exchange is "subject to the jurisdiction of the Commission" in the sense that the SEC can block or amend rules of registered securities exchanges. See 15 U.S.C. §§ 78f, 78s. Section 78s(g)(1)(A) also directs registered exchanges to comply with their own rules. But that's not enough. The only disclosures covered by clause (iii) are those "required or protected" by one of the statutes or rules listed in the rest of that clause. Here Martensen's case breaks down, for he does not identify any statute, rule, or regulation that either "requires" or "protects" his intra-Exchange complaint about his superior's directive. Although he asserts that the report was "required by rule" he does not cite or quote any rule. Then he cites generally two sections of the Exchange's Employee Handbook (one labeled "The Exchange's Open-Door Policy" and the other "Business Ethics Policies"). He does not tell us what either section requires or protects—nor does he contend that the Employee Handbook is subject to the SEC's statutory approval or amendment power.

Complaints need not plead law. See, e.g., *Johnson v. Shelby*, 135 S. Ct. 346 (2014). But appellate filings must cover material legal issues. Martensen needed to identify a rule, subject to the SEC's jurisdiction, that either "required" or "protected" his internal complaint about his superior's directive. He has not done so. It may be that some rule *does* require or protect the sort of report that Martensen made, but appellate judges need not take unguided tours through stock exchanges' regulations in the hope that something will turn up. That's a job for counsel—and Martensen, though representing himself, is a lawyer. Because Martensen has not shown that his grievance was within the scope of clause (iii), other questions can be left to *Digital Realty Trust* (and, if not answered there, to some future case).

AFFIRMED